LF 028
(Rev. 10-03-2022)

**FILED IN CLERK'S OFFICE**
U.S.D.C. - Atlanta

MAR 1 4 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## PRISONER CIVIL RIGHTS COMPLAINT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

David Timothy Moore, (GDC#443023)
_____

(Enter above the full name and prisoner
identification number of the plaintiff, GDC
number if a state prisoner.)

-vs-

Georgia Board Pardons And Paroles: Terry Barnard,Chairman;
_____

Brian Owens,Vice-Chairman;   Jacqueline Bunn,Esq. Member;
_____

David Herring, Member;   Meg Heap, Member
_____

(Enter above the full name of the defendant(s).)

**1:23-CV-1109**

---

### NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the Court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

**I.    Previous Lawsuits**

A.    Have you filed other lawsuits in federal court while incarcerated in any institution?

Yes ( ✔ )    No (   )

B.    If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline. Even if you do not know all of the information regarding a particular lawsuit, please include the information you do know to assist the Court in identifying your prior lawsuits.)

1.    Parties to this previous lawsuit:

Plaintiff(s):    David Timothy Moore
_____

LF 028
(Rev. 10/03/2022)

Defendant(s):  Aimee Smith

2.  Court (name the district):
U.S.District Court Mddle District of Georgia

3.  Docket Number:    5:21-CV-00032-TES-CHW

4.  Name of judge to whom case was assigned:  HON.Tilman E. Self, III

5.  Did the previous case involve the same facts?

Yes (   )    No ( ✔ )

6.  Disposition (Was the case dismissed?  Was it appealed?  Is it still pending?):
This case uis still pending on appeal

7.  Approximate date of filing lawsuit:  January 21, 2021

8.  Approximate date of disposition:    Unknown at this time(pending on appeal)

## II.    Exhaustion of Available Administrative Remedies

In general, prisoners must exhaust available administrative remedies (such as the prison's grievance procedures) before filing an action in federal court. 42 U.S.C. § 1997e(a). Your case may be dismissed if you have not exhausted your available administrative remedies before filing your case.

A.    Place of Present Confinement:    Dooly State Prison, Unadilla, Georgia

B.    Is there a prisoner grievance procedure in this institution?

Yes ( ✔ )    No (   )

C.    Did you present the facts relating to your complaint under the institution's grievance procedure?

Yes (   )    No ( ✔ )

D.    If your answer is YES:
    1.    What steps did you take and what were the results?
    N/A

LF-028
(Rev. 10-03-2022)

_____

_____

_____

2.   If your answer is NO, explain why not:   Parole related issues are NOT grievable
under the Georgia Department of Corrections Grievance Procedure.

_____

## III.   Parties

(In item A below, place your name in the first blank and place your present address in the second blank.)

A.   Name of Plaintiff:  David Timothy Moore, E\F#213898/GDC#443023

_____

_____

Address(es):    Dooly State Prison, P.O.Box 750, Unadilla, Georgia 31091

_____

_____

(In item B below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Do the same for each additional defendant, if any.)

B.   Defendant(s):  PLEASE SEE ATTACHED SHEET FOR THE NAME, EMPOLYMENT AND ADDRESS OF THE
DEFENDANTS

_____

Employed as  _____

_____

at  _____

_____

## IV.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

(   ) Federal official (a *Bivens* claim)
(✔) State or local officials (a § 1983 claim)

LF-028
(Rev. 10-03-2022)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Eighth Amendment of the United States Constitution

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

N/A

## V.   Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

( ) Pretrial detainee
( ) Immigration detainee
(✔) Convicted and sentenced state prisoner
( ) Convicted and sentenced federal prisoner
( ) Other *(explain)* _____

## VI.   Statement of Claim

State here as briefly as possible the facts of your case. Tell the court WHAT you contend happened to you, WHEN the incident(s) you complain about occurred, WHERE the incident(s) took place, HOW your constitutional rights were violated, and WHO violated them. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

PLEASE SEE ATTACHED SHEETS FOR STATEMENT OF FACTS/CLAIMS

I F 028
(Rev. 10 03 2022)

---

## VII. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment. if any. you required and did or did not receive.

N/A

## VIII. Relief

State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes. If requesting money damages, include the amounts of any actual and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

PLEASE SEE ATTACHED SHEET FOR THE RELIEF REQUESTED.

LF 028
(Rev. 10/03/2022)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Signed this ___6th___ day of __March__ , 20__23__

_____
Signature of Plaintiff

**STATE OF** GEORGIA _____
**COUNTY (CITY) OF** DOOLY _____

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON 6th March 2023

(Date)

_____
Signature of Plaintiff



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION


David Timothy Moore,                                    CIVIL ACTION NO:

       Plaintiff,

v.

Georgia Board of Pardons and Paroles;

Terry Barnard, Chairman; Brian Owens,

Vice-Chairman; Jacqueline Bunn, Esq.,

Member; David Herring, Member; Meg

Heap, Member,

       Defendants.

## ATTACHMENT TO CIVIL RIGHTS COMPLAINT

## PURSUANT TO 42 U.S.C. §1983


COME NOW, David Timothy Moore, Plaintiff pro se, pursuant to **_42 U.S.C. §1983_**, and submits the following as his Civil Rights Complaint.


### _I.) JURISDICTION_

This Court has jurisdiction over this proceeding pursuant to: **_42 U.S.C.§1983_**; and, **_28 U.S.C._** §**_1331_**.


### _II.) PARTIES_

### _PLAINTIFF(S):_

David Timothy Moore, E/F#213898/GDC#443023, Dooly State Prison, P.O. Box 750, Unadilla Georgia 31091;

***DEFENDANT(S):***

1.) Georgia Board of Pardons and Paroles, 2 Martin Luther King, Jr., Dr. S.E., Floyd Building, Balcony Level, East Tower, Atlanta, Georgia 30334;

2.) Terry Barnard, Chairman, Georgia Board of Pardons and Paroles, 2 Martin Luther King, Jr. Dr. S.E., Floyd Building, Balcony Level, East Tower, Atlanta, Georgia 30334;

3.) Brian Owens, Vice-Chairman, Georgia Board of Pardons and Paroles, 2 Martin Luther King, Jr., Dr. S.E., Floyd Building, Balcony Level, East Tower, Atlanta, Georgia 30334;

4.) Jacqueline Bunn, Esq., Member, Georgia Board of Pardons and Paroles, 2 Martin Luther King, Jr., Dr. S.E., Atlanta, Georgia 30334;

5.) David Herring, Member, Georgia Board of Pardons and Paroles, 2 Martin Luther King, Jr., Dr. S.E., Floyd Building, Balcony Level, East Tower, Atlanta, Georgia 30334;

6.) Meg Heap, Member, Georgia Board of Pardons and Paroles, 2 Martin Luther King, Jr., Dr. S.E., Atlanta, Georgia 30334.

*III.) STATEMENT OF CLIAMS*

*(Factual Allegations)*

1.) The Plaintiff, David Timothy Moore (Plaintiff), was born in Atlanta, Fulton County, Georgia on September 17, 1969.

2.) In February/March 1986 the Plaintiff, at the age of 16, was a high school student at the Booker T. Washington high school in Atlanta, Georgia. The Plaintiff was also employed as a dishwasher the Provino's restaurant in Atlanta, Georgia.

3.) The Booker T. Washington high school was located on the South West side of Atlanta; the Provino's restaurant was located on the North West side of Atlanta. The Plaintiff, a 16-year-old high school teenager at the time, had to commute on public transportation from school - which let out at 2:45 p.m. - on the south west side of Atlanta, to his dishwashing job on the north west side of Atlanta (the Plaintiff having to be at his dishwashing job by 4:00 p.m.). After being late for work two (2) days in a row the manager of Provino's (a guy named "Chuck") terminated the Plaintiff's employment. During the course of terminating the Plaintiff's employment the manager "Chuck" spoke to the Plaintiff in a very demeaning, derogatory, racist and degrading manner. On April 15, 1987 at the age of 17, at approximately 9:30p.m. the Plaintiff robbed Provino's; during the course of the robbery a plain clothes security person for Provino's entered the restaurant during the course of the Plaintiff robbing it; this security person, Mr. J.J. Biello -- who was also an off-duty Atlanta Police Officer -- while he was entering the restaurant, pulled his gun out of his pants, reached for the Plaintiff's gun in an effort to take the Plaintiff's gun; a brief struggle ensued, simultaneously, gunshots were fired and Mr. Biello fell to the ground and the Plaintiff turned and ran out of the restaurant. Having been shot by Mr. Biello the Plaintiff went to Grady Memorial Hospital for treatment. The Plaintiff was apprehended at Grady Memorial Hospital by Atlanta Police later in the evening on April 15, 1987.

4.) On April 28, 1987 the Plaintiff was indicted by a Fulton County, Atlanta, Georgia Grand Jury for armed robbery (on the cashier, Ms. Keri Morin), aggravated assault (on Mr. Biello), aggravated

3

aggravated battery (on Mr. Biello) aggravated assault with intent to rob (on the Assistant
Manager, Mr. Kevin Weekly).

5.) On December 8, 1987 a jury trial on the charges in paragraph numbered 4 above was
commenced. On December 11, 1987 the jury convicted the Plaintiff on all 4 charges. The
Fulton County Superior Court sentenced the Plaintiff to Life imprisonment for the armed
robbery conviction, and three separate 20 year sentences for each of the three remaining
charges, for a total of life plus 60 years.

6.) Although the Plaintiff was only a 17-year-old juvenile when he committed the
aforementioned offenses, ***at no time throughout the pretrial and trial stages was the Plaintiff
offered a plea deal; Defense Counsel never sought a plea deal.***

7.) Approximately in May of 1988 the Defendant the Georgia Board of Pardons and Paroles
("The Board") notified the Plaintiff that he would be considered for parole in May of 1994.

8.) On May 3, 1989, roughly two years into the Plaintiff's incarceration, an inmate
disturbance erupted at the Georgia Industrial Institute ("GII") in Alto, Georgia, where
approximately twenty (20) inmates unprovokingly attacked three (3) inmates. At the
conclusion of this inmate disturbance the inmate who led the 20 inmates in the unprovoked
attack on the 3 inmates ("Rambo") was stabbed by one of the 3 attacked inmates and
ultimately died; the Plaintiff herein was the inmate that stabbed "Rambo".

9.) In August 1989 a Habersham County, Alto, Georgia Grand Jury indicted the Plaintiff for a
single count of Murder. On October 12, 1989, just two months after the indictment was handed
down, the Plaintiff pled guilty to Manslaughter and was sentenced to a consecutive 15 years
imprisonment by the Habersham County Superior Court.

10.) The Board did not change or otherwise adjust the Plaintiff's consideration of parole month
due to the manslaughter conviction; the Plaintiff's parole consideration month remained at May
1994.

11.) It is (and has always been) the long standing practice of The Board that if an offender has
been convicted of multiple offenses and receives a sentence of life imprisonment on at least
one of those offenses, the life sentence becomes the primary sentence for purposes of parole

4

and, therefore, if The Board grants said offender release on parole on the offense for which the offender received a life sentence then parole is considered granted on all other offenses as well.

12.) The Plaintiff was first considered for release on parole in May 1994; on June 9, 1994 The Board denied the Plaintiff release on parole, and based the denial on the circumstances and nature of the offense and multiple offenses. In May 2002 the Plaintiff was considered for release on parole for a second time. On May 1, 2002 The Board again denied the Plaintiff release on parole, and based this second denial on the circumstances and nature of the offense. In May 2010 the Plaintiff was considered for release on parole a third time. On May 14, 2010 The Board again denied the Plaintiff release on parole, and stated "your parole release would not be compatible with the welfare of society... due to the severe nature of the offense(s) for which you were convicted". In March 2014 the Plaintiff was considered for release on parole for the fourth time. On March 6, 2014 The Board, again, denied the Plaintiff release on parole, and based this fourth denial on the same identical reasons as the third denial. In February of 2018 the Plaintiff was considered for release on parole for a fifth time. On April 24, 2018 The Board, once again, denied the Plaintiff release on parole, and based this fifth denial on "insufficient amount of time served to date given the nature and circumstances of your offenses". In February of 2021 the Plaintiff was considered for release on parole a sixth time. On March 18, 2021 The Defendants named in this Complaint denied the Plaintiff release on parole and based this sixth denial, again, on "insufficient amount of time serve to date given the nature and circumstances of your offenses"; and like in the fifth denial the Defendants commented: "You are encouraged to continue in your rehabilitative efforts so you will be properly prepared in the event a future consideration results in your transition back into society".

13.) The Defendants, when considering and denying the Plaintiff release on April 24, 2018 and March 18, 2021, exercised Unfettered Discretion.

14.) The Defendants, when exercising their unfettered discretion to deny the Plaintiff release

on parole on April 24, 2018 and March 18, 2021 -- based on "insufficient of amount of time

served to date given the nature and circumstances of your offenses" -- were not guided by,

nor relied on or used, any statutory or internally established criteria, standards, procedure

and/or guidelines.

15.) With the exception of an offender who has been sentenced to life **without** parole, The

Board has the Constitutional authority to exercise unfettered discretion to grant or deny parole

to any offender under the custody of the Georgia Department of Corrections ("GDC").

16.) In Georgia prior to 1980, there was no statutory requirement that The Board exercise its

parole powers in accordance with any specific criteria, standards, procedures and/or

guidelines.

17.) On March 18, 2021, when the Defendants considered and denied the Plaintiff release on

parole, there was still no requirement that The Board -- when considering life sentenced

offenders for release on parole -- exercise its parole powers in accordance with any specific

criteria, standards, procedures and/or guidelines.

18.) In 1980 The Georgia Legislature passed, and Gov. George Busbee signed into law, The

Parole Guidelines System. This statutory law provides, in pertinent part:

> "The Board shall adopt, implement, and maintain a parole guidelines system
>
> for determining parole action. The guidelines system shall be used in
>
> determining parole actions on all inmates, ***except those serving life sentences***,
>
> who will become statutorily eligible for parole consideration."

***O.C.G.A. §42-9-40(a)***.

19.) While the statutory law quoted above in paragraph numbered 18 above seems to identify a

system or procedure by which the Defendants exercise their unfettered discretion when

considering to release inmates on parole with "determinate sentences" (i.e., inmates with

sentences that have a numerical limit or conclusion), the Defendants have absolutely no such

system or procedure (whether statutorily or internally) for the inmate with an "indeterminate

sentence" (i.e., inmates with a sentence of life imprisonment) such as the Plaintiff.

6

20.) Although the statutory law on parole in Georgia provides that:

> "No inmate shall be placed on parole until and unless the board **_shall find_**
> that there is reasonable probability that, if he is so released, he will live and
> conduct himself as a respectable and law-abiding person and that his
> release will be compatible with his own welfare and the welfare of society."

**_O.C.G.A. §42-9-42(c)_**, the Defendants -- when it comes to indeterminate sentences, and during its consideration and denial to release the Plaintiff on parole on March 18, 2021 -- has absolutely no criteria, standards, procedures and/or guidelines (tangible or otherwise) that they can produce to show and /or establish that -- with regards to the Plaintiff specifically -- how they **determined** to deny the Plaintiff release on parole based on "insufficient amount of time served to date given the nature and circumstances of your offense(s)".

21.) In fact, the Defendants, in considering and denying the Plaintiff release on parole on March 18, 2021, did not make, and cannot produce, any findings -- that he Defendants themselves made - that establishes, shows or otherwise proves that there is a reasonable probability that if the Plaintiff is released on parole he will/will not live and conduct himself as a respectable and law-abiding person, and that the Plaintiff's release on parole will/will not be compatible with the Plaintiff's own welfare and the welfare of society.

22.) The statutory law in Georgia mandates that the Defendants make the findings outlined in paragraph numbered 21 above.

23.) As a juvenile offender the Plaintiff's level of criminal culpability is not the same as an adult's level of criminal culpability; and, thus, the Defendants -- when considering whether to release the Plaintiff on parole -- must evaluate and consider the Plaintiff for release on parole under a whole different criterion, standard, procedure and/or guideline than the one the Defendants use when evaluating and considering adult offenders for release on parole;

24.) Because children are constitutionally different from adults in their criminal culpability the Defendants were and are required -- when evaluating and considering the Plaintiff for release on parole -- to evaluate and consider the Plaintiff for release on parole pursuant to a criterion, standard, procedure and/or guideline that specifically affords the Plaintiff a meaningful and

7

realistic opportunity to obtain release based on demonstrated maturity and rehabilitation;

25.) As a juvenile offender of a non-homicide offense, the Plaintiff did not have to initially be sentenced to life without the possibility of parole in order to fall within the purview of the criteria, standard, procedure and/or guideline that mandates that, as a juvenile offender sentenced to life imprisonment for a non-homicide offense, the Defendants -- when evaluating and considering whether to release the Plaintiff on parole -- must provide the Plaintiff a meaningful and realistic opportunity to obtain release based on demonstrated maturity and rehabilitation;

26.) And while the possibility that persons convicted of non-homicide crimes committed before adulthood will remain behind bars for life is not foreclose, this exception is reserved enforced *only for those juvenile offenders who have shown an inability to demonstrate maturity and rehabilitation;*

27.) And, thus, juvenile offenders, like the instant Plaintiff, whose crimes reflect only transient immaturity -- and who have since matured -- *must be considered for release on parole pursuant to a criteria, standard, procedure and/or guideline that does not result in the Plaintiff being forced -- when compared to juvenile offenders with more serious offenses and adults who committed similar or more serious offenses than the instant juvenile Plaintiff -- to serve a disproportionate and excessive amount of incarcerated time*.

28.) The Defendants do not have -- and did not have when they considered and denied the Plaintiff release on parole on March 18, 2021 -- a criteria, standard, procedure and/or guideline where consideration for the grant or denial of release on parole, regarding an offender sentenced to life imprisonment as a juvenile offender, makes a specific distinction between whether the offender was an adult or a juvenile when he/she committed the offense;

29.) Likewise, the Defendants do not have -- and did not have when they considered and denied the Plaintiff release on parole on March 18, 2021 -- a criteria, standard, procedure and/or guideline that specifically afforded the Plaintiff a meaningful opportunity to obtain release on parole based on demonstrated maturity and rehabilitation;

30.) The criteria, standard, procedure and/or guideline -- if any -- the Defendants used to consider and deny the Plaintiff release on parole on March 18, 2021 has resulted in the instant

8

juvenile Plaintiff being forced to serve a disproportionate and excessive amount of incarcerated time than those offenders who committed murder as an adult and were sentenced life imprisonment;

31.) In fact, when compared to those offenders who have committed homicide or murder as an adult the Defendants have chronically, habitually, knowingly and deliberately required the Plaintiff -- who committed a non-homicide offense as a juvenile -- to serve far more incarcerated time on his life sentence than the offender who committed murder as an adult and was sentenced to life imprisonment;

32.) For example: Offender #250750 committed murder as an adult and was sentenced to life imprisonment in 1990, the Defendant Parole Board released him on parole in 2008; Offender #269821 committed murder as an adult and was sentenced to life imprisonment in 1993, the Defendant Parole Board released him on parole in 2008; Offender #230199 committed murder and armed robbery in 1989, the Defendant Parole Board released him on parole in 2008;

33.) Mr. David Michael Haggerty was sentenced in 1993 to three (3) consecutive life sentences for murder, the Defendant Parole Board released him on parole in 2022; Mr. George Cooper committed multiple murders as an adult and was sentenced to multiple life sentences, the Defendant Parole Board, in 2022 after he served 34 years of incarceration, released him on parole; Mr. Nikita Glenn, who committed murder as an adult and was sentenced to life imprisonment, was released by the Defendant Parole Board after being incarcerated for 26 years; Mr. Shawn Myers, who committed murder as an adult and was sentenced to life imprisonment, was released by the Defendant Parole Board after being incarcerated for 26 years; Mr. Benny Shaw, who committed murder as an adult and was sentenced to life imprisonment, was released by the Defendant Parole Board after being incarcerated for 25 years; Mr. Benjamin Hood, who committed murder as an adult and was sentenced to life imprisonment, was released by the Defendant Parole Board after being incarcerated foe 28 years; Mr. Ladji Ruffin, who committed murder as an adult and was sentenced to life imprisonment, was released by the Defendant Parole Board after being incarcerated for 23 years.

9

34.) As of the submission of the instant Complaint the Defendants have knowingly and deliberately caused the Plaintiff -- who was a juvenile when he committed the non-homicide offense of armed robbery and was sentenced to life imprisonment -- to remain incarcerated for 35&$^{1}/_{2}$ years and counting; yet, not one of the offenders in paragraphs numbered 32 and 33 above have served 35 years, even though the nature and circumstances of their offense(s) were far more severe than the instant juvenile Plaintiff's offense(s).

35.) For juvenile offenders like the instant Plaintiff the Defendants provide absolutely no actual hearing but, instead, use a consideration process whereby a "Hearing Examiner" prepares a "summary" of the offenders' parole file for a determination of whether to grant or deny release on parole;

36.) The "Hearing Examiner's" "summary" focuses: a.) the offenders' offense; and, b.) the impact of the offense on the victim and/or the community;

37.) In fact, the "Hearing Examiner's" "summary" in the instant Plaintiff's case summarized why the Plaintiff should be denied release on parole yet, did not note, suggest or otherwise summarize how the Plaintiff could improve his chances of being released on parole in the future; the order denying the Plaintiff release on parole simply made a perfunctory statement that "you are encouraged to continue in your rehabilitative efforts so you will be properly prepared to succeed in the event a future consideration results in your transition back into society". First, nothing in this statement informs the Plaintiff of exactly what it is he must do to improve his chances of being released on parole in the future; second, this statement establishes that -- while the Plaintiff is encouraged to continue his rehabilitative efforts -- there is absolutely no assurance that the Plaintiff (as a juvenile offender who committed a non-homicide offense) will be released back into society on parole, no matter how mature and rehabilitated he may become.

38.) A thorough and deliberate review of the instant Plaintiff's Institutional and departmental files from November 9, 1987 thru the filing of the instant Complaint will establish the Plaintiff's gradual and consistent maturity and rehabilitation from a troubled juvenile just entering the

GDC to an offender who has successfully completed a plethora of rehabilitative classes, courses, vocational programs, and becoming a Certified R.I.S.E. (Reinforcing, Instructing, Supporting, Encouraging) Mentor that mentors to his peers who are already in the GDC and those younger offenders just entering the GDC, with the Plaintiff being one of only five Mentors certified to facilitate a study coarse known as TOPUCU (The Only Person U Cheat is U) which is a study coarse that not only trains and conditions you to deal with and break addiction and bad and destructive habits and behavior but, the TOPUCU coarse also trains and conditions you How to avoid becoming a victim of or susceptible to bad and destructive habits.

### IV.) CLAIMS

The Plaintiff claims that at all times relevant to this Complaint that each named Defendant has acted under color of state law and is being sued in his/her official and individual capacity;

i.) The Plaintiff further claims that because the Defendants did not rely on or use any statutory or internally established criteria, standard(s), procedure(s) and/or guideline(s) in denying the Plaintiff release on parole on March 18, 2021, the Defendants March 18, 2021 decision to deny the Plaintiff release on parole was arbitrary and capricious because it caused the Plaintiff to serve a disproportionate and excessive amount of incarcerated time than those adult offenders serving life imprisonment for homicide or murder, all in violation of the Eighth Amendment to the United States Constitution;

ii.) The Plaintiff further claims that because the Defendants have knowingly and deliberately made absolutely no findings (when denying the Plaintiff release on parole on March 18, 2021) that there is a reasonable probability that if the Plaintiff is released on parole the Plaintiff will/will not live and conduct himself as a respectable and law-abiding person and that the Plaintiff's release on parole will/will not be compatible with his own welfare and/or the welfare of society, the Defendants' March 18, 2021 decision to deny the Plaintiff release on parole was arbitrary and capricious because it has caused the Plaintiff to serve a disproportionate and excessive amount of incarcerated time on a life sentence for a non-homicide offense than those adult offenders serving life imprisonment for homicide or murder, all in violation of the Eighth

11

Amendment to the United States Constitution;

iii.) The Plaintiff further claims that because the Defendants have knowingly and deliberately failed and refused to evaluate and consider the Plaintiff for release on parole pursuant to a criteria, standard, procedure and/or guideline that specifically makes a distinction between juvenile offenders who received life imprisonment and adult offenders who received life imprisonment, the Defendants March 18, 2021 decision to deny the Plaintiff release on parole was arbitrary and capricious because it has caused the Plaintiff to serve a disproportionate and excessive amount of incarcerated time on a life sentence for a non-homicide offense than the adult offender serving life imprisonment for homicide or murder, all in violation of the United States Constitution;

iv.) The Plaintiff further claims that because the Defendants have knowingly and deliberately failed and refused to create a criteria, standard, procedure and/or guideline that specifically affords the Plaintiff -- as a juvenile offender who is serving a sentence of life imprisonment for a non-homicide offense -- a meaningful and realistic opportunity to obtain release based on demonstrated maturity and rehabilitation, the Defendants March 18, 2021 decision to deny the Plaintiff release on parole was/is arbitrary and capricious because it has caused the Plaintiff to serve a disproportionate and excessive amount of incarcerated time on a life sentence for a non-homicide offense than those adult offenders serving life imprisonment for homicide or murder, all in violation of the Eighth Amendment to the United States Constitution;

v.) The Plaintiff further claims that the Defendants March 18, 2021 decision to deny the Plaintiff release on parole constituted a Gross Abuse of the Defendants unfettered discretion in per se violation of the Eighth Amendment to the United Constitution because the criteria, standard, procedure and/or guideline the Defendants used in their evaluation and consideration of whether to release the Plaintiff on parole knowingly and deliberately failed and refused to:

> a.) specifically make a distinction between offenders who committed their offense(s) as a juvenile and were sentenced to life imprisonment, and those offenders who committed their offense(s) as adults and were sentenced to life

12

imprisonment; and,

b.) specifically afford the Plaintiff a meaningful and realistic opportunity to obtain

release on parole based on demonstrated maturity and rehabilitation,

which has resulted in the Plaintiff serving a disproportionate and excessive amount of

incarcerated time when compared to adult offenders who committed homicide or murder as an

adult and was sentenced to life imprisonment;

vi.) The Plaintiff further claims that the Defendants' March 18, 2021 decision to deny the

Plaintiff release on parole constituted a Gross Abuse of the Defendants' unfettered discretion

in per se violation of the Eighth Amendment to the United States Constitution because the

criteria, standard, procedure and/or guideline the Defendants used in their evaluation and

consideration of whether to release the Plaintiff on parole knowingly and deliberately failed and

refused to specifically afford the Plaintiff a meaningfully and realistic opportunity to obtain

release based on demonstrated maturity and rehabilitation which has resulted in the Plaintiff

serving a disproportionate and excessive amount of incarcerated time when compared to the

adult offender who committed homicide or murder as an adult and was sentenced to life

imprisonment.

### _V.) RELIEF_

The Plaintiff pray this Honorable Court issue and Order the following relief:

I.) Declaratory Judgment, pursuant to the **_Federal Rules of Civil Procedure, ("F.R.Civ.P")_**

**_57_**, finding and Declaring that the Defendants named herein, at all times relevant to this

Complaint, have violated the Plaintiff's Eighth Amendment Right to be free from

Disproportionate and excessive Punishment;

II.) A Permanent Injunction, pursuant to **_F.R.Civ.P, Rule 65_**, enjoining the Defendants,

their employees, staff, successors in office, and those working in concert with them to create,

implement and enforce criteria, standard(s), procedure(s) and/or guideline(s) that specifically:

a.) makes a distinction -- between offenders who committed their offenses

as juveniles and were sentenced to life imprisonment, and offenders who

committed their offenses as adults and were sentenced to life imprisonment; and,

13

b.) affords offenders, who committed their offense as juveniles and were

sentenced to life imprisonment, a meaningful and realistic opportunity to obtain

release based on demonstrated maturity and rehabilitation;

III.) Allow the Plaintiff at least one hundred twenty (120) days to conduct discovery;

IV.) Allows the Plaintiff to amend his Claims and Relief;

V.) Reward the Plaintiff the cost of this litigation and attorney's fees;

VI.) Award the Plaintiff such other and further Relief as this Honorable Court deems just and

equitable.

This 6th day of March, 2023.

RESPECTFULLY SUBMITTED,

DAVID TIMOTHY MOORE,

PLAINTIFF, PRO SE

SWORN TO AND SUBSCRIBED

BEFORE ME THIS 6th DAY OF

March, 2023.

NOTARY PUBLIC

MY COMMISSION EXPIRES: 7-23-2026



GREGORY SCOTT DIXON
Commission
Expires
NOTARY
PUBLIC
JULY 23,2026
DOOLY COUNTY, GEORGIA

14



**UNITED STATES POSTAL SERVICE** ®

# PRIORITY® MAIL

PRIORITY MAIL
POSTAGE REQUIRED

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included f
- Limited international insura
- When used internationally,

*Insurance does not cover certain ite
Mail Manual at http://pe.usps.com.
** See International Mail Manual at ht

**MAILING EN**
FOR DOMESTIC AND IN

To schedule free Package Pick
scan the QR code.



USPS.COM/PICKUP

**UNITED STATES POSTAL SERVICE.**   Retail

**US POSTAGE PAID**
$9.80

Origin: 30217
03/13/23
1234100370-02

**PRIORITY MAIL®**

1 Lb 11.10 Oz

**RDC 22**

EXPECTED DELIVERY DAY: 03/14/23

C039

SHIP
TO:   75 TED TURNER DR SW
ATLANTA GA 30303-3315

**USPS TRACKING® #**



9505 5108 7941 3072 1675 39



**TRACKED ▪ INSURED**



PS00000133100

EP14 September 2021
OD: 15 x 11.625

---

**FROM:**

**PRIORITY**
★ MAIL ★

**UNITED STATES POSTAL SERVICE** ®

VISIT US AT USPS.COM*
ORDER FREE SUPPLIES ONLINE

**FROM:**

David Timothy Moore, GDC# 443023
Dooly State Prison
P.O. Box 750
Unadilla, GA  31091

**TO:**

Kevin P. Weimer, Clerk
United States District Court (N.D. Ga.)
Richard B. Russell Federal Bldg.
2211 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA  30303-3361

Label 228, March 2016   FOR DOMESTIC AND INTERNATIONAL USE



**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

PRESS FIRMLY TO S'

PRESS FIRMLY TO SEAL